CARROL C. HOMER *vs*. Schooner LADY OF THE OCEAN.
LEWIS ROBBINS     *vs*. SAME.
ELBRIDGE G. COLBY, Jr., & others *vs*. SAME.

Hancock.    Opinion November 12, 1879.

*Launching.   Lien.   Repairs and construction.*

The launching of a vessel is a definite period, and one well understood as applied in shipbuilding; and it is the only period from which the four days can be computed under the first clause of R. S., c. 91, § 7.

When work and materials are furnished for repairs and not for the construction of a vessel, the lien under the first clause of R. S., c. 91, § 7, does not attach.

The test to be applied in distinguishing between a new vessel and one repaired does not depend upon the comparative amount of new and old material used.

Nor is it necessary that the dimensions or burden should remain unchanged to constitute a repaired vessel.

The real test is whether the existence and identity of the vessel remain.

ON REPORT.  The law court to determine the law and the facts and render judgment according to the legal rights of the parties.

· ASSUMPSIT by the plaintiffs in the three several actions for materials and labor furnished for, and used in, rebuilding schooner "Lady of the Ocean," brought to secure lien.

The only question was whether the vessel was rebuilt so that she was again to be launched; or whether she was simply repaired.

*Joseph L. Buck*, called by the defendants, testified in substance that the vessel was hauled in, in the first place, at the side of the wharf and dismantled, her rigging taken off, her spars taken down, then blocks laid down on the beach and she floated upon the blocks; that thereupon she was raised somewhat aft; was supported with shoes under the bilge and deck under the transom; the timber was taken out, stick by stick, and replaced with new so far as the old was removed; the outboard skin was mainly left on; some streaks taken off for convenience, but, in the main, her timber plank remained until she was timbered and ceiled, when her outboard plank was taken off.  The stem and lower apron was old; her floor timbers mainly old—some new timbers put in —some new naval timbers.  The stem was in the same situation

with reference to the keel. The apron remained as it was originally in the same position and has not been taken out. It would be next to impossible to take it out and put it in again or to take the stem off and put it on again. The floor timbers and navals were not taken out. The floor timbers and naval timbers were bolted together as they were in the first place; they remain so to-day. The tide flows over a wall ahead of her some eight or ten feet from her stern. The wall is perhaps some three feet in height; she lays stern to the water; the tide flows all around the vessel at ordinary tides; perhaps at extremely low tides it would not. In full tides it flows so as to flow over the top of the wall. I have observed the vessel within three weeks when there was water enough around her to float her if she had been tight; it was quite a full tide. There are holes in her for the purpose of allowing the tide to ebb and flow to prevent her floating; without the holes in her it would not be safe to leave her in a full tide; she would go adrift.

*H. D. Hadlock,* for the plaintiff, cited R. S., c. 91, § 7, contending that building, rebuilding, constructing and reconstructing were synonymous. Ferax, 1 Sprague. Having been changed as to dimensions she must as to lien claims, be treated as a new vessel; for altered form or burden requires new register. 1 Pars. Mar. L. 35, U. S. R. S., §§ 4170, 4147, 4169. *Blanchard* v. *Martha Washington,* 1 Cliff. 468. U. S. R. S., § 4136.

DANFORTH, J. In these actions the several plaintiffs claim a lien upon the vessel attached under R. S., c. 91, § 7. That the lien as claimed once existed is not denied; and the only question involved is whether it continued up to the time of the attachment. If it accrued under the first clause of the statute it is conceded that it did so continue, otherwise it did not. The first clause continues the lien four days after the vessel is launched; the last clause four days after the labor has been completed.

It is quite evident that in contemplation of the statute, when labor or materials are furnished for a vessel in the water, whether for construction or repairs, the lien accrues under the last clause only, otherwise there can be no definite time from which the four days can be reckoned. Under the first clause the lien ceases in

four days after the vessel is launched.   But a vessel already in the water cannot be launched, the meaning of which in such cases is, "to cause to move or slide from the land into the water." During all the time the work in this case was going on this vessel was in the water, certainly not upon the land.   It was not in a situation where it could be moved from the land into the water.   It was at no time upon the "stocks" as a vessel in process of building.  True it was blocked up, but in a place where, by a preponderance of evidence at least, it is shown that it was floated by the water and whence, whenever the blocks are removed, it may be floated again.  The launching is a definite period, one well understood as applied in shipbuilding, and the only period provided by law from which the four days can be computed under the first clause of the statutes.   In this case there is no possibility of any such launching as the statute contemplates.

Another reason why the lien in these cases cannot attach under the first clause of the statute is, that the work and materials must be considered as having been furnished for the purpose of repair and not of construction.   The test to be applied, is not the comparative amount of new and old material used.   It is undoubtedly true that a new vessel may be built out of material all of which may have been taken from another one, or a vessel may be so repaired that in process of time not a particle of the material of which it was originally built shall remain.   Nor is it necessary that the dimensions or burden should remain precisely the same.

The statute of the United States relied upon by the plaintiff, R. S., § 4170, which requires a new register when a vessel has been "altered in form or burden, by being lengthened or built upon," clearly contemplates that such a change does not make a new vessel, else the act would be a work of supererogation.   Other acts provide for the registering of new vessels, this provides for old vessels already registered but which have been "altered."

The real test is whether the existence and identity of the vessel remains.   In this case the preponderance of the evidence leaves no question of that fact, though as the burden of the proof is upon the plaintiff to bring the case within the provisions of the statute he must fail unless the preponderance is in his favor.   The work

was begun and ended upon the "Lady of the Ocean," one and the same vessel from the beginning to the end; during its progress the form and identity of the vessel remained; there was no time when the existence of one vessel ceased and that of another commenced. As the work progressed old and decayed material was taken out and replaced by new, leaving the vessel in existence just the same as if the work had been done at different times for a series of months or years.

More than "four days after the work has been completed" having expired before the attachment was made, the entry must be

*Judgment against the vessel denied in each case.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and SYMONDS, JJ., concurred.